ETELD, P.,
delivered the opinion of the court as follows:
On the 4th day of December, 1835, Samuel B. Larmour, being indebted to Samuel Jones and John Jones, of Baltimore, composing the late firm of Talbot Jones &Co., in the sum of 81,500, for money advanced, and in a further amount not specified, on merchandise account, by deed of that date, conveyed to Robert J. Taylor, three tenements or lots of ground in Alexandria, in trust to secure the payment of the same. The indebtedness referred to in the deed of trust was subsequently increased by other dealings, to $4,837 91. Por the payment of this amount with interest, from the 19th December, 1840, Larmour executed his promissory note on the 10th Pebruary, 1841, payable to Samuel Jones *and John Jones, or order; and to secure its payment, he conveyed, in trust, to L. B. Taylor, another tenement or lot of ground in Alexandria. The note was kept by Mr. Taylor, in his hands, as the property of Talbot Jones & Co., until the 10th of August, 1846. The firm of Talbot Jones & Co., at the date of the note, consisted of Samuel Jones, jr., only, the surviving partner, John Jones, the other partner, having died in June, 1840. In 1846, Talbot Jones & Co. drew, in favor of Jones, Burneston & Co., five bills of exchange on Larmour, to the amount of $5,729 69. The first was dated April 1st, 1846 — the last, July 20th, 1846. They were drawn by Talbot Jones & Co., and were accepted by Larmour on the faith of Larmour’s note to Talbot Jones & Co., then in the hands of Taylor. The bills were endorsed by Jones, Burneston & Co., discounted at the bank, and proceeds received by Samuel Jones, jr. These bills were afterwards protested, and paid by Jones, Burneston & Co. On the payment of them Jones, Burneston & Co. became the creditors, for their amount, of Samuel Jones, jr., the drawer, and of Larmour, the acceptor. He had a right to go at once against Larmour, as acceptor, and make him pay the amount, or he had a right to go against Samuel Jones, jr., as drawer, and make him pay the amount. Had he taken this last course, then, on payment of the amount, Samuel Jones had a right to go against Larmour, and compel him to refund to him. Larmour having accepted the bills on the faith of funds of Jones in his own hands, (his own note to Jones,) he was an acceptor for value, and was liable, as such, to the drawer. He was, in fact, first liable, and last liable, to pay the amount of those bills. On the 10th of August, 1846, Talbot Jones & Co. drew an order on Taylor, directing him to close the deed of trust given by Larmour, and pay the proceeds to Jones, Burneston & Co. The order was accepted by Taylor, and Taylor then sent the note to Jones, Burneston & Co., of Baltimore, and they got Samuel Jones, jr., surviving partner of Talbot Jones & *Co. to endorse the note to them. The endorsement was made in blank, on the back of the note, on the 14th of August, 1846, and the note delivered by Samuel Jones, jr. to Jones, Burneston & Co. Let it be borne in mind, that all of the five bills, hereinbefore referred to, had been drawn, and the first one in the series had become payable a day or two before the note of Larmour was endorsed to Jones, Burneston & Co. Samuel Jones, jr., alias Talbot Jones & Co., having failed in the fall of 1846, on the 6th of October of that year he made a composition deed, by which he conveyed all his estate, except “the Wheatfield Inn,” and all debts due to him, or to Talbot Jones & Co., to William Winn and James Ross, for the benefit of his creditors who should, ‘on or before the first day of January next, execute and deliver to the trustees full and absolute releases and ac-quittances to the said Samuel Jones, jr. of and from their aforesaid claims.” The trustees issued their written notices to the creditors on the first of December, apprising them of the provisions of the deed. At the foot of one of these notices, Jones, Biume-ston & Co., on the 31st December, 1846, executed, under the hands and seals of William Woodward and Thomas Burneston, the surviving partners, a release to the following effect: “In consideration of the provisions of the above deed, we do hereby release to the said Samuel Jones, his executors, administrators and assigns, all demands, on whatever account, which we have against him, either jointly or severally.”
On the 13th June, 1846, at Alexandria, D. C., Lambert & M’Kenzie drew a bill for $3,000 in favor of John Ilooff', Cashier, on Talbot Jones & Co., of Baltimore, which Jones accepted by the firm name of Talbot Jones & Co. The bill was protested for non-payment, and is the foundation of the appellant’s claim in this suit. Talbot Jones & Co. being non-residents of the District of Columbia, Lambert & M’Kenzie filed their bill in equity under the act of 1792, one of the Virginia statutes, then in force in Alexandria, regulating *proceedings against absent defendants and absconding debtors. See Code of 1792, p. 15. They made Samuel B. Larmour, Lawrence B. Taylor, Samuel Jones, Patrick Henry Sullivan, and John Hooff defendants, and no one else. The object of the suit was to attach in the hands of Samuel B. Larmour a sum sufficient of a debt due from him to Samuel Jones and Patrick Henry Sullivan, absent defendants, *706 trading under the name of Talbot Jones & Co., to satisfy their claim against Samuel Jones and Patrick Henry Sullivan of $3,000 with interest and costs. The subpoena, with the restraining order endorsed thereon, was served on the home defendants, Rar-mour and Taylor, on the ISth September, 1846. After this, and before any further proceedings in the cause were had, Alexandria was retroceded to Virginia, a circuit superior court of law and chancery established there under the jurisdiction of Virginia, and the cause removed to that court. ; . i 1 :
In June, 1847, the defendants Taylor, Samuel Jones and Patrick Henry Sullivan, filed their answers. Prom the answer of Jones and Sullivan it appeared that there were fatal errors in the plaintiffs’ bill, in alleging that the bill of $3,000 had been drawn upon and accepted by them as members of the firm of Talbot Jones & Co., when that firm had been composed of Samuel Jones and John Jones, and that the debt due from Rarmour was not due to Samuel Jones and Patrick Henry Sullivan, but to Samuel Jones and John Jones, and so expressed on the face of the note and deeds of trust. To correct these errors was the object of an amended bill filed in October, 1847, by which new parties were also made, and amongst them were Jones, Burneston & Co., of Baltimore, and Samuel Jones, surviving partner of Samuel and John Jones of the firm of Talbot Jones & Co. In consequence of these errors, Rambert & M’Kenzie, by virtue of their attachment of the ISth September, 1846, acquired no such valid lien on the Rarmour debt as would have prevented him from paying it away, nor as would incapacitate Samuel Jones from *giving a lien or of assigning it over to another person on good consideration. The plaintiffs, as to this debt, acquired no valid and effectual lien on the debt before their supplemental bill was filed in October, 1847, if then. Before this time, the order from Samuel Jones to Taylor had been drawn and accepted; the note endorsed by Samuel Jones, surviving partner of the firm of Talbot Jones & Co., to Jones, Burneston & Co. ; the five bills drawn, accepted, endorsed, negotiated, (and taken up by Jones, Burne-ston & Co. after they became due) ; the composition deed of trust from Samuel Jones to Winn and Ross executed, and the release made by Jones, Burneston & Co., by virtue of which, if the Rarmour debt had not been theretofore assigned to Jones, Burneston & Co., it passed to Winn and Ross under the deed of trust. If so assigned,' but. released by Jones, Burneston & Co., it in like manner inured to the benefit of the creditors under the composition deed. So that, in either case, the attachment lien of the appellants, of October, : 1847, if they had any, would have to yield all claim of priority over the claims of . Jones, Burneston & Co. and of the creditors under the composition deed.
In relation to this attachment lien of • 1847, I will, in passing, say, that it would ■ ; not be difficult to shew that the plaintiffs . had no right to file their amended bill for i the object above referred to, because, on its face, it shewed that the original bill was groundless and should have been dismissed. An amended bill is not allowed to be filed to present a new and distinct mat1 ter of controversy, but to bring before the court other parties to the controversy, or to : explain and set forth more fully the matters of the original bill, or matters connected with the original bill, which should be brought into the litigation. And this being a proceeding by attachment, should be made to conform strictly to all the rules of pleading. The amended bill introduced entirely new matter, wholly separate and distinct from the matter of the original bill. A debt *due to the plaintiffs from Samuel Jones, surviving partner of Samuel & John Jones, is altogether different from a debt due from Samuel Jones and Patrick H. Sullivan; and so also is a debt due from Rarmour to Samuel and John Jones from a debt due from Rar-mour to Jones and Sullivan. And equally separate and distinct from each other was the amended bill and the original bill. Nor would it be difficult to shew that there was nothing on which the attachment could operate; and, being a proceeding in rem, might have been dismissed on that ground, as the jurisdiction of the court could be sustained only on the fact that the absent defendants had effects within the jurisdiction of the court which were liable to the plaintiffs’ claim. But let this pass by as a matter of unimportant concern in this case.
: In 1846, Rqrmour owed Talbot Jones & Co. a note amounting, principal and interest, to about $6,500, secured by two deeds of trust on real estate. On the faith of this fund Jones, the surviving partner, drew five bills on Rarmour to the amount of $5,729 69. On the faith of this fund they were accepted by Rarmour. They were endorsed by Jones, Burneston & Co., knowing nothing of the arrangement between the drawer and acceptor, nor of the relations as debtor and creditor between them. The notes were discounted and proceeds received by Samuel Jones. The last in the series became payable November the 23d, 1846, and all five were taken up by the endorsers, Jones, Burneston & Co. On the payment of these bills Jones, Burneston & Co. became creditors of both the acceptor and drawer for the amount of the bills, with interest and charges. Rarmour, by virtue of his acceptance of these bills, became entitled to an equity in the note he owed Sam’l Jones, the surviving partner of Talbot Jones & Co., and had a right to set off his liability as acceptor for the amount of those bills against his obligation to pay the note due to Jones. See Feazle v. Dillard, 5 Leigh, 30, and Wayland v. Tucker, 4 Grat. 267. This equity *belonged to • ■ Rarmour. It exists to this day in favor of his administrator and heirs, and they have a right to have the proceeds of the Rarmour debt applied to the satisfaction *707 of the five bills, if that has not been already done.
It "has been contended, on behalf of the appellants, that when Jones, Burneston & Co. executed their release under the composition deed, they ipso facto released the lien on the Barmour debt, which then enured to them by virtue of their attachment lien, and that the benefit of the two deeds of trust passed therewith to them as an incident. I shall have occasion presently to shew that the release did not operate on the Barmour debt. But suppose such had been the intention, in part, of that release, and that Jones (Talbot Jones & Co.) had been thereby discharged from their indebtedness to Jones, Burneston & Co., would that release Barmour, as acceptor of the bills, from his liability to pay the amount to Jones, Burneston & Co.? It most assuredly would not have that effect. Bar-mour having accepted these bills on the faith of the debt he owed Talbot Jones & Co., and being therefore an acceptor for value, he was the person ultimately bound for their payment; and as he was last bound, as well as first, no release of a man who was bound and might be compelled to pay before he was, would operate as a discharge of Barmour.
2d. On the 10th of August, 1846, Talbot Jones & Co. directed the trustee, B. B. Taylor, to close Barmour’s deed of trust and pay the proceeds to Jones, Burneston & Co. This order was accepted by Taylor. If this was not a legal assignment of the note from Barmour to Talbot Jones & Co. it was certainly a good equitable assignment of the note, and, as an incident to the transfer, the two deeds of trust made to secure the payment of the debt from Bar-mour to Talbot Jones & Co., also passed over to Jones, Burneston & Co. But, in order to remove, as would seem, all difficulty on this score, the note was sent by Taylor to Jones, Burneston Co. It was presented to Samuel Jones, jr., (alias Talbot Jones & Co.) and by him, as the surviving partner, was, by an endorsement made on the back of the note, transferred and assigned to Jones, Burneston & Co. and then delivered over to Jones, Burneston & Co. as their property. Their title to the note was, in its inception, a qualified right, depending on their having to pay these bills; but, when they paid the bills, their title became absolute, and they had a perfect right to regard the assignment of the note as a payment to be applied in satisfaction of the five bills, with all costs and damages thereon. And we are bound to conclude that they have done that which it was both their right and interest to do before they made the release herein-before referred to. If this is to be considered as having been done, how does the account stand? Taking the 20th of September, 1846, as the average period of time at which the five bills became payable, and setting off against their amount, including principal, interest and charges of protest, the amount of principal and interest on the Barmour note, and it will be found that there will be a balance of about $750 left of the Barmour debt, after refunding to Jones, Burneston & Co. the amount paid b}’ them on account of the five bills, for the payment of which the note had been transferred in August, 1846. This being the state of the account, there was no debt due, in respect to these transactions, from Talbot Jones & Co. to Jones, Burneston & Co., on the 31st December, 1846, upon which the release could operate. How this overplus shall be disposed of, is a matter in which the appellants have no interest, because Talbot Jones & Co. were otherwise indebted to Jones, Burneston & Co. to a large amount, and if the balance above referred to is not to be applied as a credit on that indebtedness, it must enure to the benefit of the composition creditors under the deed to Winn and Ross, who are entitled to priority over the appellants’ attachment lien (if any they have) under the amended bill filed in October, 1847.
*It has been argued, on behalf of the appellants, that the endorsement of Barmour’s note, on the 14th August, by Talbot Jones & Co., for the benefit of Jones, Burneston & Co., is void for the want of a stamp. Suppose we were to sustain this view of the appellants’ counsel, still the title of Jones, Burneston & Co. would not be invalidated. On the 10th of August, 1846, Talbot Jones & Co. directed Taylor to close the deed of trust and pay the proceeds to Jones, Burneston & Co. This was not a note in writing obliging Talbot Jones & Co. to pay money; it was a mere authority for Taylor to pay money to Jones, Burne-ston & Co., and being accepted bj- Taylor, the trustee and holder of the bond, gave to Jones, Burneston & Co. an equitable lien on the fund. It operated substantially as a transfer of the note and the securities bound for its payment. I cannot, therefore, perceive what just point the appellants would accomplish by invalidating the endorsement of the 14th of August. But let us notice the objection taken to the endorsement for the want of the stamp.
The law of Maryland (called the stamp act) of 1844, ch. 280, requires that a stamp tax shall be paid on every piece of paper on which shall be written certain enumerated instruments, specifying promissory notes, bills of exchange, and “other evidences of debt.” It is contended that the endorsement of the 14th of August, made by Talbot Jones & Co., falls within the meaning of the words ‘ ‘other evidences of debt.” The provisions of the statute of 3 and 4 Anne, in relation to promissory notes payable to bearer or order, placing them in all respects upon the footing of bills of exchange, was the law of the District of Columbia when this note and endorsement were made; and as Barmour’s note was a note payable to order, it is to be regarded as a bill of exchange, the legal title to which passed by endorsement. If it had been endorsed before it became due, that endorsement would have required no stamp, *708 as no liability to pay attached to the endorser until fixed, after non-payment of the note, by ^protest and notice. But where a bill of exchange, after the day of payment has passed by, is endorsed, no liability can thereafter be fixed by protest and notice; because the bill cannot after that' be negotiated and protested. But the endorsement of an over-due bill is a new contract between the parties. It authorizes the endorsee to write a draft in his favor on the maker at sight. This draft, or new contract, would require a stamp. Firbank v. Bell, 1 Barn. & Ald. 38. I am willing, therefore, to concede, that if this were a suit in a Maryland court, the endorsement would be regarded as void for the want of a stamp, and would, not be received in evidence to prove title to the note. But the rule of evidence is very different here. In the language of Chief Justice Denman, in Brown v. Thornton, 6 Adol. & El. 185, 33 Eng. C. L. R. 47, I will say, ‘ ‘ we cannot here adopt a rule of evidence from a foreign court.” I have examined a great many decisions on this question, and find they are somewhat' in conflict. But the weight and current of authority show that the want of the stamp is no good cause of objection here to the endorsement of 14th August.- Mr.'Robinson, in his new work on Practice, vol. 1, p. 319 and 271, lays down the correct rule, and refers to authority in support of it, ‘ ‘that although a stamp be required by the revenue laws of a foreign State before a document can be received ■ in evidence there, such document may nevertheless be admitted as evidence without the stamp in the country wherein the suit is brought.” In Holman v. Johnson, 1 Cowp. 341, Lord Mansfield said, “no country takes notice of the revenue laws of another;” and James v. Catherwood, 16 Eng. Com. Law, 165, referred to by - Mr. Robinson, is a strong case in illustration of the rule.
I am of opinion, that there is no error in the decree.
The other judges concurred with FIELD, P.
Decree affirmed.