## Richmond.

### Long, Trustee, *v.* Meriden Britannia Co. & Others.

June 17, 1897.

1. Conveyance to Secure Creditors—*Release clause—Preferences.*—An insolvent debtor may convey his property in trust to secure his creditors, and impose upon the creditors who accept the provisions of the deed the condition that they shall release him from personal liability for the residue of their demands. Preferences may be given in such deed as in other assignments. But such conveyance must convey all, or substantially all, of the debtor's property, otherwise it will be deemed fraudulent in law, and evidence will not be received to countervail this conclusion.

2. Conveyance by Firm to Secure Creditors—*Release clause—Presumption as to individual assets.*—If an assignment is made by a firm of the social assets to pay the social debts, containing a release clause, but conveying no property of the individual creditors, the law does not presume that such property existed and was withheld from the creditors. The presumption of law is always in favor of innocence and honesty. The conveyance need not show on its face that it embraced all the estate of the grantors, but this fact may be shown by other evidence.

3. Conveyance to Secure Creditors—*Release clause—Omission of assets—Life insurance policies.*—The object of an assignment for the benefit of creditors is a speedy realization of the assets and a prompt distribution amongst creditors, and it is no fraud on the creditor in a deed containing a release clause to omit assets which would be burdensome to the trust fund, nor life insurance policies which have no cash surrender value.

4. Conveyance to Secure Creditors—*Release clause—Effect on collaterals previously assigned—Policy on life of debtor.*—A clause in a deed to secure creditors which requires a release of the debtor from personal liability for the balance of the debts not paid out of the trust fund, does not affect the right of the creditor to hold collaterals previously assigned to secure the payment of his debt. Such release does not extinguish the debt, nor deprive the creditor of any security held for it. A policy on the life of the debtor assigned to and held by the creditor is not affected by such release.

Appeal from a decree of the Corporation Court of the city of Lynchburg, pronounced April 17, 1894, in a suit in chancery wherein the appellees were the complainants, and the appellant and others were the defendants.

*Reversed.*

The deed assailed in this case not only conveyed and assigned the property specifically enumerated, but also contained a general clause by which the grantors conveyed "all other personal property and effects of every description belonging to said firm." The other facts appear in the opinion of the court.

*Harrison & Long* and *Kirkpatrick & Blackford*, for the appellant.

*Wilson & Manson* and *Kean & Lile*, for the appellees.

RIELY, J., delivered the opinion of the court.

It is not contended that there was any actual fraud in making the deed of assignment in controversy. The ground of the attack upon the deed is the constructive or legal fraud claimed to result from the alleged failure of the grantors to surrender their entire estates for the payment of their debts, although exacting from the creditors, who should accept the benefits of the assignment, a release from personal liability for such part of their debts as the fund should be insufficient to discharge.

Whatever may be the course of decision in other States, it is established in Virginia that a debtor may convey his property in trust to secure the payment of his debts, and impose upon his creditors the condition that those who participate in the fund shall release him from the residue of their demands. And, in making such deed of assignment, he may give preferences among his creditors as in other deeds of assignment which do not contain a release clause. This was first decided

in this State in 1837, in the case of *Skipwith's Ex'or* v. *Cunningham*, 8 Leigh 271. The principle of that decision has since been repeatedly followed. *Kevan* v. *Branch*, 1 Gratt. 274; *Phippen* v. *Durham*, 8 Gratt. 457; *Wickham & Goshorn* v. *Lewis Martin & Co.*, 13 Gratt. 427; *Gordon* v. *Cannon*, 18 Gratt. 387; and *Paul* v. *Baugh et als.*, 85 Va. 955.

Thirty years after the decision in *Skipwith's Ex'or* v. *Cunningham*, *supra*, we find Judge Moncure, who was long the able President of this court, in discussing this doctrine in *Gordon* v. *Cannon*, *supra*, saying: "Whether the doctrine be sound in its origin or not, it ought to govern our courts until otherwise provided by the Legislature." Thirty years have elapsed since then, and considerably more than half a century since the doctrine was promulgated in *Skipwith's Ex'or* v. *Cunningham*, but in all that time the Legislature has not seen fit to interfere or provide otherwise. So that if anything can be considered as settled by repeated judicial decisions and lapse of time, it may be considered as thoroughly established in this State that a deed of assignment by a debtor of his property for the payment of his debts, which stipulates for his release by his creditors from personal liability for such part of their debts as the fund may not discharge, though giving preferences to some of the creditors, is valid. It is too late at this day to depart from a doctrine so consistently recognized and uniformly enforced by this court, and to question the validity of such a deed of assignment.

But it is an essential condition of the doctrine that the debtor shall convey by the deed all, or substantially all, of his estate. He cannot stipulate for his release from his debts, when the conveyance for their payment does not embrace substantially all his estate. He may, by an honest surrender of his estate, protect his future earnings from the pursuit of such of his creditors as may accept the provisions made by him for their benefit, but he can not do so by giving up a part of his present property, and reserving the other part for his own

benefit. The provision made for his creditors must be substantially a surrender of all his property, or it will come within the condemnation of the statute against fraudulent conveyances. "Any omission of property for the purpose of securing a substantial benefit to the debtor, (except such property as may be exempt by law from distress or levy), conclusively shows such an intention," that is, an intention to delay, hinder, or defraud creditors. From the omission of the debtor to surrender a substantial part of his estate, or property of substantial value, the law conclusively infers an intent to delay, hinder, or defraud creditors, and precludes all inquiry to the contrary. The omission is deemed to constitute fraud in law, and evidence cannot countervail this conclusion. The provision made for the benefit of creditors is, therefore, declared by the law, in such case, to be frauduent and void.

This being the law, it was claimed that the deed in the case at bar was fraudulent on its face, and void, because it conveyed only partnership property, and included no individual estate of the grantors. It was contended that the law would presume from the failure to include any individual estate in the conveyance that all the individual property of the grantors had been intentionally omitted in order to secure it for their own benefit. The law makes no such presumption. The presumption of the law is always in favor of innocence and honesty, and never in aid of the establishment of fraud. And, moreover, it was not necessary that the conveyance should show on its face that it embraced all the estate of the grantors, but it was competent to prove that fact by evidence *aliunde*. *Gordon* v. *Cannon*, 18 Gratt. 396.

This brings us to the consideration of the evidence in regard to the property claimed to have been omitted. Does it show that all, or substantially all, the estate of the grantors was conveyed by the deed?

The trustee, upon the deed of assignment being made to him, caused an inventory to be made of the property con-

veyed, upon the basis of its cost, and it amounted to the sum of $65,732.48. Its net cash value, as estimated by a witness for the complainant, a person in the same line of business as the grantors, and therefore peculiarly competent to value the property, was $32,256. The liabilities were ascertained to be $37,587.56.

The property charged to have been omitted, and on account of which omission it was claimed that the deed was fraudulent and void, was the following:

(1). Certain lots in the vicinity of Lynchburg and elsewhere.

(2). Five shares of Bohls cigarette machine stock.

(3). The household and kitchen furniture of F. D. Johnson, the piano given by him to his daughter, and a one-horse carriage belonging to him.

(4). The household and kitchen furniture of J. B. Johnson and the piano claimed by his wife.

(5). Three policies of insurance on his life, amounting to $4,000.

(6). Certain policies of insurance on the life of F. D. Johnson.

It will be briefly considered in the above order.

First. As to the lots.

It appears from the evidence that the lots were bought during the period of wild speculation that passed over the country a few years since, and were what are commonly known as "boom lots." The grantors desired that these lots should be included in the conveyance when the assignment was made, and they were only left out upon the advice of their counsel and the trustee, upon the sole ground that the lots really possessed no value, and if included in the conveyance would prove to be a burden and an expense to the trust, instead of a profit or a benefit. And the testimony certainly tends at least to sustain that conclusion, especially as under the test of an actual sale, made under the supplemental deed, of the only lots which, it was thought, would justify the costs of a

sale, the net result was only $35.04. The testimony is to the effect that the remaining lots would not pay the expenses of a sale.

Second. The Bohls cigarette machine stock.

This stock, though standing in the name of F. D. Johnson, was bought and paid for by the firm. It was treated as an asset of the firm, and at the time of the assignment was held as collateral security for a debt due by the firm. It was in fact partnership property, and passed to the trustee under the deed of assignment. *Hardy, trustee,* v. *Norfolk Man. Co.,* 80 Va. 404.

Third. The household and kitchen furniture of F. D. Johnson, the piano given by him to his daughter, and a one-horse carriage belonging to him.

The only evidence of the value of the household and kitchen furniture was an appraisement made at the instance of the trustee and the grantors by two disinterested and competent persons. They estimated its value to be $239.25. The lease of F. D. Johnson of the house occupied by him as a dwelling did not expire until February 1, 1894, and was at the rate of $400 per annum. The rent had been paid or secured to be paid to August 1, 1893, leaving the rent for six months, to-wit, $200, unprovided for. For this amount there was a lien on his household and kitchen furniture, which, according to the appraisement, exceeded the rent by $39.25, if no expense should be incurred by a sale of the property to pay the rent.

The piano was bought by him in 1881, twelve years before the assignment, for the price of $200, and given to his daughter, who used it until her marriage, and then gave it to her younger sister. There was no other evidence of its value. The most that can be said of a piano that cost originally the sum of $200, after twelve years service, would be that it was an asset of inconsiderable value for the payment of debts.

The carriage cost originally $200, and was insured for several years for $150. F. D. Johnson was under the impres-

sion, when the assignment was made, that it belonged to the firm, and considered it as surrendered to the trustee. He so intended, and never thereafter used it. It turned out afterwards upon examination that it had been charged up to him on the books of the firm when it was bought. Nothing was shown as to its actual value, and it appears that the failure to mention it specially in the conveyance was clearly a piece of inadvertence.

Fourth. The household and kitchen furniture of J. B. Johnson and the piano claimed by his wife.

The property, exclusive of the piano, was appraised at $117. His lease of the house occupied by him as a dwelling had six months to run from April 1, 1893, at the rental value of $300 per annum. So that the value of his household and kitchen furniture, upon which there was the landlord's lien for the unpaid rent of $150, was less than the rent. As to the piano, it appears that it was bought about five years before the assignment for $335. A part of the purchase money—it was not shown how much—belonged to his wife, having been given to her. The residue was paid by J. B. Johnson, who to that extent intended the piano as a gift to his wife and considered it as her property. There was no evidence of its value at the time of the assignment, except such as arose as a presumption from the purchase price.

Fifth. Three policies of insurance on the life of J. B. Johnson.

It is only necessary to say of the one in the New York Life Insurance Company, that the evidence shows that it was a tontine investment policy, had no surrender value, and was not legally purchasable by the company.

The other two were twenty year endowment policies and matured respectively in 1902 and 1908.

The object of an assignment for the payment of debts is a speedy realization of the assets by the trustee, and the prompt distribution of the proceeds among the creditors. The trustee

would not have been warranted in withdrawing from the trust fund the moneys necessary to keep the policies alive until their maturity.    Such a course could only be prompted by a purpose to speculate upon the chances of the early death of the insured, and would result in postponing for an indefinite period the settlement of the trust fund, contrary to the very object and spirit of an assignment for the payment of debts.

The insured, as appears from the provisions of the policies, could only demand a paid-up policy in proportion to the annual premiums that had been paid when the demand was made. Neither policy contained a provision for a cash surrender value upon the failure to pay the premiums, and the company could not have been required to pay any sum in cash for the surrender of the policies.    A paid-up policy could only be realized at the specified time the original policy would mature, unless the death of the insured occurred sooner.    It could not be transferred, except to a person having an insurable interest in the life of the beneficiary, and could only be held by him as a means of reimbursement.    The law would not permit a purchaser to speculate upon the life of the assured, and his right to the proceeds of the policies would be restricted to the moneys he had actually paid.    Under these circumstances it is very doubtful whether the policies could be considered in the eyes of the law as convertible and valuable assets.    See *In re McKinney*, 15 Fed. Rep. 538.

It is true that it appears from the evidence that the insurance company was induced, after this litigation was begun, to offer $570 for one of the policies and $30 for the other, but it was under no legal obligation to pay these or any other moneys for their surrender, and there was no ground, when the assignment was made, to expect such liberality.    The policies were not included in the assignment, because they were not considered by their owner as having any particular value, or that they would materially increase the trust fund created for the payment of the debts.

Sixth. Certain policies of insurance on the life of F. D. Johnson.

At the time the deed in controversy was made, the complainant held by assignment as collateral security for its debts certain policies of insurance on the life of F. D. Johnson to the amount of $15,000. It was contended that by executing the release required to enable it to participate in the trust fund, it would forfeit its right to the policies, which would relieve them from the assignment, and that they should therefore have been included in the conveyance. The basis of this contention was that the complainant by executing the release would lose its insurable interest in the life of F. D. Johnson, and consequently all right to recover on the policies, at least for its own benefit.

It is obvious that the policies were not included in the deed for the reason that they were held by the complainant, as above stated, as collateral security for its debt, which, at least, equalled the aggregate amount of the policies, and it was not intended that its right in respect to the policies should be in anywise impaired by its acceptance of the terms of the deed. The release was in terms confined to the personal liability of the debtors. A debt is not extinguished until it is paid, and it was not intended by the deed of assignment to extinguish any debt, or to interfere with any security held for its payment by any creditor.

The complainant had two sources of security for the payment of its debt, namely, the policies of insurance and the personal liability of its debtors. The release of one would be no release of the other. The release of a right is not to be construed to mean more than it expresses. The deed only required the complainant, in accepting the provision made by the deed for its debt, to release the debtors from personal liability. There was no direction or intention that any creditor should release any property or any lien thereon held as security for its debt, nor would this be the effect of a release of

the debtors from personal liability. Such release would not extinguish the debt, nor deprive a creditor of any security held for it. A release of all claims on a debtor for a debt does not release a subsisting lien to secure the same debt, unless it was so intended. *Pierce* v. *Sweet*, 33 Pa. St. 151; and 20 Am. & Eng. En. of Law, 758. In *Lambert* v. *Jones*, 2 P. & H., 144, it was held that a party to a composition deed, who executes the release required thereby, of all claims and demands against the grantor, in consideration of its benefits, is not to be prevented, either in view of the release or of the general principles in regard to composition deeds, from retaining a note assigned to him in good faith by the grantor, before the execution of the deed, in discharge or payment of a *bona fide* debt.

The complainant, by reason of the indebtedness to it, had the right to take an assignment of the policies as security for its debt. The assignment was valid in its inception; the debt was still unpaid, and the assignment in force, when the deed in controversy was made; and the right of the complainant to retain the policies, and to receive the benefit of their proceeds, when payable, so far as necessary to discharge its debt and reimburse it for premiums paid, expenses incurred, and interest thereon, would not be impaired by the release of the insured from personal liability for its debt. May on Insurance, secs. 108 and 117; and Richards on Insurance, sec. 27. The continuance of the contract of assignment, after the release of the debtor simply from personal liability, would not, in such case, give to it a wagering character and bring it within the condemnation of the law against wager policies. There is nothing in *Roller* v. *Moore's Adm'r*, 86 Va. 512, or in *Warnock* v. *Davis*, 104 U. S. 775, in conflict with this conclusion.

. We have thus discussed, at the risk of tediousness, the property claimed to have been omitted from the conveyance, and perhaps more fully than was justifiable in an opinion. In

doing so, we have deemed it unnecessary, in view of its nature and character as disclosed by the testimony, to express in figures any conclusion as to its value, or to estimate in like manner the loss to the trust fund from its omission. We may add, however, that the estimate put upon it by the lower court was not only erroneous in including property that passed under the conveyance, as we have shown, but, without particularizing, was, as to that which was really omitted, excessive. Relatively, it was of small value. It is very clear from the testimony that it was not omitted by the grantors from any purpose to withhold it from their creditors, or to secure a benefit to themselves. It was shown beyond any dispute that it was their purpose to surrender every particle of property possessed by them, whether social or individual, and that they requested their counsel to prepare the deed of assignment to that end and effect. It was further shown that, with the exception of the policies of insurance on the life of J. B. Johnson, which were not mentioned because, as already stated, he did not consider them of any real value to the trust fund, all the property, which was not in fact included in the conveyance, was left out at the suggestion and by the advice of their counsel, one of whom had been selected as the trustee, in whose joint judgment the omitted property would prove more of a burden upon the trust fund and a hindrance to its administration than a profit. There could not be a more honest intention to surrender all of one's estate to the satisfaction of debts than is proved in this case. The judge of the lower court, though pronouncing the deed fraudulent and void, because, in his opinion, it did not embrace substantially all of the estate of the grantors, had no doubt as to the good faith of the transaction, and we cannot better express our own conclusion from the testimony on this point than in the following quotation from his opinion: "The evidence leaves no room for doubt as to the honesty and perfect good faith of the Messrs. Johnson in making this assignment. There was no

intention of fraudulent concealment or design of reserving to themselves the enjoyment of valuable assets. They not only stated their purpose of surrendering all their property, both partnership and individual, but at first they had no intention of exacting a release from their creditors, believing that the assets would produce sufficient to pay all in full. They yielded to the suggestion of a release because it would enable them to resume business undisturbed by their creditors, if any were left unpaid. Nor can the slightest intimation of moral turpitude be made against any one concerned in the transaction. The grantors, the trustee, the counsel, and the creditors are, in the judgment of the court, absolved from all suspicion of wrong doing."

And in confirmation of their good faith and honest intention that all of their estate of every kind, which could be made available for the payment of their debts, should be dedicated to that end, the grantors, as soon as they learned that this suit had been instituted, and the validity of their deed of assignment had been attacked because they had not included in the conveyance the property referred to, executed and caused to be recorded a supplemental deed, conveying the omitted property, except the policies of insurance, to the same trustee, and upon the same trusts, and for the benefit of the same creditors prescribed and designated in the original deed.

In *Skipwith's Ex'or* v. *Cunningham*, 8 Leigh, 271, a deed, having a release clause similar to that contained in the case at bar, was sustained, notwithstanding the reservation on its face of the sum of $350 out of the trust fund for the individual use and disposition of the grantor.

In *Kevan* v. *Branch*, 1 Gratt. 274, the deed conveyed a lot of land and certain personal property upon trust to pay specified debts of the grantor, with the provision that he should be permitted to remain in quiet and peaceable possession of the property for six months. It was argued that the deed was fraudulent and void, because the whole beneficial interest

in the property was not conveyed, and that if the possession and use of the property could be reserved for six months, it could, with equal propriety, be reserved for six years. The deed was nevertheless sustained.

In *Paul* v. *Baugh*, 85 Va. 955, there was a like reservation by the grantor for eleven months of the possession of the property conveyed, with the right to take the profits thereof to his own use; but the court held that the deed essentially complied with the requirements of the law.

In *Phippen* v. *Durham*, 8 Gratt. 457, the grantor failed to convey all of his property, and the deed for this reason was attacked as fraudulent and void, but it was sustained by a unanimous court, each of the four judges, who sat in the case, delivering an opinion in favor of its validity. Judge Moncure, in the course of his opinion, referring to the case of *Skipwith's Ex'or* v. *Cunningham*, said: "That case expressly recognizes the distinction taken by Chancellor Kent in *Seaving* v. *Brinkerhoff*, 5 John. Ch. R. 329, that to make such a deed valid it must convey all, and not a part only, of the debtor's property. And as the deed in this case does not profess to convey, and did not in fact convey, all of the debtor's property, it might be contended that the deed was on that ground invalid. The property, however, not included in the deed was probably of small value, consisting, as appears from the schedule of choses in action, to the amount of $131.65, an interest in lands lying in Western Virginia, forfeited for non-payment of taxes, three old stoves, etc., and it would therefore perhaps be proper to say in this case, as was said in the case of *Skipwith's Ex'or* v. *Cunningham*, that the deed essentially complies with the requirements of the law."

It remains to apply the principle and spirit of these decisions to the case in hand. "What invalidates a deed in such cases is," said Judge Moncure, in *Gordon* v. *Cannon*, 18 Gratt. 397, "an intention to delay, hinder, or defraud creditors, &c.; and unless there be such an omission of property in

the deed as shows such an intention, it is not material."
Considering the amount and value of the property conveyed,
and the nature and value of that omitted, and therewith the
perfect good faith shown in the transaction, and giving due
weight to the judgment of counsel, who prepared the deed,
and of the trustee, who was to administer the trust, contem-
poraneous with the preparation of the conveyance, as to the
value of the property omitted and the reasons for its omis-
sion, we are of opinion, in the light of the decisions hereto-
fore made by this court in similar cases, that the deed in
question is not subject to the condemnation of the statute
against fraudulent conveyances.  We do not think that there
was such an omission of property as conclusively manifested
an intention to delay, hinder, or defraud creditors.

Our opinion, therefore, is in favor of the validity of the
deed, and the reversal of the decree of the Corporation Court.

*Keith*, P., dissents.

*Reversed.*