## CHARLESTON.

TUFTS *v.* COPEN, *et al.*

Submitted September 12, 1892.—Decided February 12, 1893.

1. MARRIED WOMAN—SEPARATE ESTATE—CONTACTS—EASEMENT —INJUNCTION—STATUTE OF FRAUDS.

Where a married woman, who is the owner of a tract of land lying on a creek, for a valuable consideration gives her verbal assent that a party may build a tramroad along said creek through her said lands for the purpose of transporting timber from lands lying above hers to market, and in pursuance of said verbal assent said party at considerable expense under her immediate observation constructs such road and operates the same for some time, a court of equity will restrain her by injunction from obstructing said road and thereby defeating its use as aforesaid.

2. MARRIED WOMAN—SEPARATE ESTATE—CONTRACT.

A married woman being entitled under our statute to receive the rents, issues and profits of her separate estate, and to enjoy

the same free from the control or disposal of her husband, as if she were a single woman, necessarily has the control of said rents and profits herself and may make such lawful contracts and agreements as will enable her to receive and enjoy such rents and profits.

J. A. HUTCHINSON for appellant:

I.—*Parol license for use of land executed can not be revoked.*— 7 Dana 276; 2 Met. (Ky.) 98; Hill. Inj. § 60; 4 Johns. Ch'y 434; 3 Kent Com. 437; 31 Pa. St. 263; 57 N. Y. 220, 221; 10 Am. Dec. 38; 42; 54 Am. Dec. 153; (injunction against violation of a parol license executed) 9 Cent. Rep. 910; 4 Serg. 241; 52 N. Y. 209, 220.

II.—*Married Woman is estopped in equity, where she has received consideration for easement and money has been expended.*—78 Ill. 611; 90 N. Y. 250; 100 Ind. 558; 90 Ill. 174; 71 Pa. St. 436; Big. Estop. (4th Ed.) 581; 84 Pa. St. 521; 1 West. Rep. 253; 93 N. C. 64; Big. Estop. 437; 82 Va. 822, 824, 825; Bisp. Eq., § 282; Big. Estop. § 437; 22 Gratt. 573, 585.

III.—*Defendants are properly injoined from interfering with the road built by appellant, on the faith of the license executed.*—2 Pom. Eq. § 814, and note; 63 Am. Dec. 190.

J. G. NIGH for appellees cited 31 W. Va. 9; Code, c. 98, s. 1; 20 W. Va. 415; Id. 398; 102 N. C. 545; 107 N. C. 507.

ENGLISH, PRESIDENT:

This was a suit in equity brought in the Circuit Court of Wirt county, by E. L. Tufts against Mary E. Copen and H. P. Copen, on the 9th day of August, 1890, to enjoin and restrain the defendants from in any manner interfering with his alleged right to the free and uninterrupted use and possession of a certain tramroad, and his operating cars thereon, for the transportation of freight and timber through, along, and upon a certain tract of land owned by said Mary E. Copen.

The facts on which the plaintiff in his bill bases his claims for relief, as set forth in the bill, are, in substance, as follows:

In the spring of 1889 he intended to construct a line of

tramroad up Standing Stone creek—a stream that empties into the Little Kanawha river, in said county of Wirt, for the purpose of transporting staves and other products of timber to market, and also for the purpose of transporting merchandise and such other freights as might be offered. The said Mary E. Copen was a married woman, and the owner of a tract of land, through which the said Standing Stone creek flows.

In the month of April, 1889, he made an agreement with the said Mary E. Copen by which, in consideration of the sum of twenty five dollars cash paid, she agreed that he might construct and operate a tramroad along said creek through and over her farm situated thereon.

He gave her his check for that amount on the First National Bank of Parkersburgh, W. Va., payable to said Mary E. Copen or order, which check was given in full for right of tramroad as per agreement; and she received said check indorsed the same and drew the money thereon, and used the same.

Relying upon said contract, and upon the payment of said cash to the said Mary E. Copen, he constructed a line of tramroad along said Standing Stone creek, with the full knowledge, approval and consent of the said Mary E. Copen and her husband, and spent a considerable sum of money in constructing said tramroad for use. Twenty five dollars was adequate and ample compensation for said tramroad. It did not damage the lands of said Mary E. Copen, or injure her in any manner whatever, but was really a benefit to her farm, and she herself stated it would benefit the farm by protecting the banks of the creek. A copy of said check was exhibited with the plaintiff's bill.

After said tramroad was constructed through her land, and ready for operation, he permitted the same to be used by the Standing Stone Railway Company, of which he was president and manager, and he through the said company had enjoyed peaceable and uninterrupted possession of said tramroad, so constructed through the said lands of said Mary E. Copen, from the 7th of April, 1889, until recently.

By reason of said agreement, and the payment of said money, he acquired an easement therein, and had a right

to operate said tramroad over, through and upon said land, which easement is perpetual. Within the last few days before the filing of said bill the said Mary E. Copen and her husband, the said H. P. Copen, had obstructed said tramroad, and denied the plaintiff the use thereof, and had built a fence across the same, and by threats of violence had prevented plaintiff from having the full and free use and enjoyment of said easement.

Relying on said easement, he expended money upon the construction of said tramroad, and has made contracts for the shipment of large quantities of ties, staves, timber, and merchandise over said railway by said company, and had been engaged in transporting large quantities of the same without objection from the defendants until within the last few days, and defendants are now denying the plaintiff the privilege of using said tramroad for the purposes for which it was constructed.

The said H. P. Copen is a person worthless in his habits, void of character, and has no financial standing or visible property, and that a judgment for damages could not be collected from him for the smallest amount. The said defendants are acting in defiance of their agreement, and if they are permitted to obstruct him in the use of the easement so acquired through said land, he will suffer irreparable loss, injury, and damage. He is remediless at law. The said H. P. Copen is absolutely insolvent, and the defendant Mary E. Copen is a married woman; and he has no outlet or way to get to the Little Kanawha river with his freight, save and except across said tract of land, upon said tramroad, contracted and paid for by him. The check, a copy of which was exhibited with said bill, was drawn by E. L. Tufts on the First National Bank of Parkersburgh, in favor of Mary E. Copen or order, for twenty five dollars, dated April 7, 1889, and stated on its face that it was in full for right of tramroad as per agreement, and was indorsed by Mary E. Copen and H. P. Copen, and was also indorsed by M. R. Lowther to W. H. Wolfe, cashier, and a memorandum indorsed thereon as follows: "Paid April 23, 1889. Parkersburgh, W. Va."

Defendants demurred generally to said bill, and for

special cause of demurrer said that by his bill the plaintiff shows clearly that he is not entitled to the relief prayed for, in this : that he has no agreement for the use of the land he claims to use, in writing; that the same is only verbal, and good and valid only for one year from April 17, 1889. The defendants, M. E. Copen and H. P. Copen, filed their answer to said bill, putting in issue the allegations thereof.

Quite a number of depositions were taken both by plaintiff and defendant, and on the 19th day of June, 1891, a decree was rendered in the case dissolving the injunction which had been awarded the plaintiff on the 8th day of August, 1890, and dismissing his bill, with costs ; and from this decree the plaintiff applied for and obtained this appeal.

The counsel for the defendants, in their brief, do not insist upon their demurrer, and the question therein raised is also raised by the answer, to wit, whether a writing or deed was necessary in order to confer upon the plaintiff the right claimed in his bill, and to avoid the effect of the statute of frauds ; and for that reason we may discuss the question in considering the case upon the law and the facts.

The first question I shall examine is whether the defendant, Mary E. Copen, being a married woman had the right to grant the license or easement mentioned in the plaintiff's bill.   It is alleged in the bill, and not controverted by the answer, that the defendant, Mary E. Copen,.was the owner of the tract of land through which Standing Stone creek flows, and that she is a married woman.   It is also alleged in the bill that the agreement between said Mary E. Copen and the plaintiff was, in consideration of twenty five .dollars cash paid, that he might construct and operate a tramroad along said creek, through and over her farm, and that.relying upon said contract, and the payment of said money, he constructed said tramroad along said creek, with the full knowledge, approval, and consent of said Mary E. Copen and her husband ; and the weight of the evidence in the case sustains these allegations.

This transaction can not be regarded as either a sale or conveyance of said tract of land, or any part thereof; and for that reason it was unnecessary that her husband should

join with her in making the contract. Under section 1 of chapter 66 of the Code of 1887, she was entitled to the rents, issues and profits of her land as if she were a single woman; and we hold that the money received by her for this license or easement might well be included in the general expression, "rents, issues, and profits of her land."

While it is true that the agreement set forth in the bill could hardly be called a lease, yet the money received by her for the privilege of passing along said creek over her land would be classed as an issue or profit arising therefrom; and it is difficult to perceive how she could acquire the issues and profits of her separate estate unless she was allowed to contract in reference thereto, since the statute expressly provides that "the same shall in no way be subject to the control of her husband." If, as provided by section 1 of chapter 66 of the Code, it was acquired before the Code of 1868, and if acquired since said Code, as provided in section 2 or 3 of said chapter, the same shall not be subject to the disposal of her husband.

Let us inquire, then, how a license or easement of the character claimed by the plaintiff in his bill may be acquired. If the wife has the right, under our statute, to control her separate estate, and the law indicates, that she is the only person who has such power, it follows that she alone can acquiesce in its use by another.

As to the mode in which a license in the nature of an easement may be acquired, Goddard on the Law of Easements (page 90) says: "A mere license in the nature of an easement may be acquired in any way by which permission can be understood to have been given, and whether there is any writing in existence to prove the grant or not." And on page 91 the same author says: "In addition to these modes of acquiring licenses, they may frequently be implied from the passive acquiescence of the grantor in the act of the licensee; but in many instances, when the acquiescence is not sufficient, or of such a character as to support a defence of leave and license in an action, it is sufficient to entitle the *quasi* licensee to the equitable assistance of the court to restrain interference with the enjoyment of the privilege."

Bishop on the Law of Married Women (volume 2, § 493) says: "Whatever be the limits which coverture places on the doctrine of estoppel when applied to the wife, those limits proceed from her disabilities under the law. In proportion, therefore, as the late statutes have removed these disabilities, the scope for the application of the doctrine of estoppel is enlarged. Thus, in New York, as observed by ALLEN, J., 'a married woman is *sui juris* to the extent of the enlarged capacity to act conferred by statute, and may be estopped by her acts and declarations, and is subject to all the presumptions which the law indulges against others with full capacity to act for themselves. To this extent the old restrictions of the doctrine of estoppel, as applied to married women, are not in force, because, the reason of the rule ceasing with the removal of the incapacity, the rule fails.' The above quotation is from the case of *Bodine* v. *Killeen*, 53 N. Y. 93; and it is held in the syllabus of that case that married women, to the extent and in the matters of business in which they are by law permitted to engage, owe the same duty to those with whom they deal, and may be bound in the same manner, as if unmarried." See *Sherman* v. *Elder*, 24 N. Y. 381.

Our statute with reference to the property and rights of married women is mainly taken from the Code of New York, and the first four sections of our statute upon the subject are almost exact copies of the statute of that state. I find, however, this difference in the language: In the New York statute it is provided that such property "shall not be subject to the disposal of her husband," and the language in our statute is that "the same shall in no way be subject to the control of her husband."

As we have seen, when acquired before the Code of 1868, in one of the modes prescribed by said section 1, and such property as she may own at the time of her marriage, or that she may acquire after her marriage in the modes prescribed by sections 2 and 3 of said chapter, shall not be subject to the disposal of her husband. The record does not disclose when or how said Mary E. Copen acquired title to said land, and I regard it as immaterial, as it would be free from the disposal of her husband, whether acquired before

1868 or after her marriage, contracted after that date. The language of said first section in our Code would take from the husband the management of such estate, while the New York Code and sections 2 and 3 of chapter 66 of our Code would both prevent him from disposing of it.

"It is a settled rule of law that, when one state adopts the statute of another state or country, it also adopts the judicial construction of that statute in the state from which it is taken, up to the time of its adoption."

In the case of *Owen* v. *Cawley*, 36 N. Y. 600, it was held: "By the operation of these acts the antecedent disabilities incident to the conjugal relation were so far modified as to secure the wife in the beneficial enjoyment of the new interests she was permitted by law to acquire. She was still without capacity to bind herself personally by a naked promise, note or bond; but she could exercise the right of an owner by subjecting her estate to equitable charges for her own benefit;" * * "where a charge is created by her own express agreement, for a good consideration, though for a purpose not beneficial to her estate, or even for the sole benefit of her husband, she is bound in equity by the obligation she thus deliberately chooses to assume."

Again, in the case of *Bank* v. *Pruyn*, 90 N. Y. 250, it was held that a married woman could not bind herself by contract unless—*First*, the obligation was created by her in or about carrying on her trade or business; *second*, unless the contract relates to, or is made for the benefit of, her separate estate, *etc.*

Other cases might be cited from the New York decisions as to the power of a married woman to contract with reference to her separate estate, but these are deemed sufficient to indicate the rulings of the court in that State.

Wells, in his work on the Separate Property of Married Women (section 325) says, so far as the statutes allow a married woman to make contracts and incur debts in behalf of her separate property—or, what is the same thing, her separate business—she must exercise the power with the incidental liabilities attached. If she makes an unprofitable adventure she can not be heard to allege her coverture, or to say that she derived no benefit from the

transaction, or to invoke the protection of the law against her mistakes, ignorance or inexperience.

This whole matter is very lucidly set forth by the Mississippi court thus: "A married woman may engage in trade, in the commercial sense, and in other employments which require time, labor and skill, and shall be bound by her contracts made in such business. When the statute retains to the wife her property, real and personal, and secures to her the rents, issues and profits, it intends she shall, like any other proprietor, so deal with it as to make profit. She may rent her lands, or make any contract for the use thereof. She may engage for buildings thereon, materials therefor, or for work or labor, or improvement of the same. * * *

"The tendency of legislation, guided by the lessons of experience and enlightened reason, is to a larger freedom from the common-law disabilities of coverture. * * *

"When the legal capacity exists, the contract stands upon the same footing as if she were unmarried. If she bargains with a mechanic to build a dwelling-house, she will not be heard to object to the debt because of her imprudence or folly in causing the erection of too expensive a house. * * *

"The capacity conceded, a married woman, like other persons, must take the chances and risks of her business transactions. The law will not intervene, and relieve from all consequences of their mistakes, misfortunes or follies." *Netterville* v. *Barber*, 52 Miss. 171.

The question as to the liability of married women on their contracts was before the Supreme Court of Illinois in the case of *Nixon* v. *Halley*, 78 Ill. 612, and it was held: "If a married woman is in the possession of property, claiming to own and controlling the same, and on her declaration of ownership employs a party to make improvements on the same, under the belief that it is her separate property, she will be estopped from denying that she owned the same, when sued for the value of the labor performed."

So, also, in the case of *Patterson* v. *Lawrence*, 90 Ill. 174, it was held: "While contracts and agreements of a mar-

ried woman respecting her real estate, and conveyance thereof by her, without her husband uniting in the execution thereof, made in 1868, if free from fraud, could not be enforced at law or in equity, yet if a married woman makes a contract or agreement respecting her real estate, with another, by fraudulent means, and thereby obtains an inequitable advantage, a court of equity will hold her estopped from setting up her coverture to retain the advantage, and require her to perform the contract, if executory, and prevent her from avoiding the same, if executed, or will compel her to place the other party *in statu quo* before she will be allowed to rescind or repudiate such contract or agreement, as the equities of the case may require."

Pomeroy, in his Equity Jurisprudence (volume 2, § 814) says: "Upon the question how far the doctrine of equitable estoppel by conduct applies to married women, there is some conflict among the decisions. The tendency of modern authority, however, is strongly towards the enforcement of the estoppel against married women, as against persons *sui juris*, with little or no limitation on account of their disability. This is plainly so in states where the legislature has freed their property from all interest or control of their husbands, and has clothed them with partial or complete capacity to deal with it as though they were single."

Upon the question as to the specific performance of a parol contract for a license amounting to an easement, it was held in the case of *Wynn* v. *Garland*, 19 Ark. 23: "Where parol license amounting to an easement has been given, and where the enjoyment of it has been necessarily preceded by expenditure of money or capital, or where the grantee has made improvements in good faith under the grant, or invested his capital in consequence of it, the grantee becomes a purchaser of the easement granted by parol, for a valuable consideration, and will be entitled to have it specifically performed in equity, unless the party will reimburse him in his expenditures, or pay him for his improvements, provided this will put the grantor *in statu quo.*"

And again, in the case of *Brewing Co.* v. *Morton*, 47 N. J. Eq. 158, the court held that where a license has been so far executed that its revocation would work a fraud, actual or

constructive, upon the licensee, equity will restrain such revocation, although its continuation results in an easement upon the lands of the licensor in favor of the lands of the licensee," in which case the subject is thoroughly discussed, and numerous authorities cited.

Again, in the case of *Rindge* v. *Baker,* 57 N. Y. 221, DWIGHT, J., in delivering the opinion of the court, says : "As a court of equity will take a parol contract for the sale of lands out of the statute of frauds, where it is partly performed, it will, on this same principle, treat an executed parol contract for an easement as equivalent to a grant under seal, where the parties can not be restored to their original position."

The testimony of the witness Daniel Bell shows that twenty five dollars was a sufficient consideration for the right of way, and that H. P. Copen was dissatisfied, and said his wife had acted the fool in selling the right of way to said Tufts for twenty five dollars. D. E. Williams heard H. P. Copen and his wife talking about the matter; and they informed him that E. L. Tufts had bought the right of way through their land, for a tramroad, for twenty dollars or twenty five dollars. This was about the 1st of April, 1889. C. J. Lewis saw the check for twenty five dollars for the right of way for this tramroad through their land, and he understood from all the parties, that day, that the right of way was to continue as long as the road was kept in operation, and that the road was for the main creek. It is also shown by several witnesses that the road did not pass through the fields, and did not damage the property, but was rather a benefit, in protecting the creek banks. The defendant Mary Copen saw the work progressing as the road was being constructed through her lands, and boarded the hands that worked on the road. That said road had been completed for about five miles, and the plaintiff had expended several thousand dollars in improvements, and contracted for the hauling of several millions of feet of lumber, which could not be transported if the road remained obstructed; and no objection was made to the construction of the road until more than a year had elapsed after the road was completed through defendant's land.

So that upon the law and upon the facts the equities of the case are on the side of the plaintiff; and under the decisions we have cited, although the contract or agreement to allow the plaintiff to construct his tramroad through the lands of defendant Mary Copen was verbal, yet, she having received a reasonable consideration therefor, and having acquiesced in the construction of the road, and allowed said contract to be executed by the plaintiff at great expense to himself, she is estopped from now obstructing said road, or repudiating said agreement. A court of equity will not allow the defendant Mary Copen to retain the money paid her, neither will it sanction her conduct in permitting the plaintiff to expend his money in the construction of his road through her land in pursuance of her verbal assent, and after the work is completed, and in operation, destroy its entire usefulness by an obstruction placed across it on her lands.

My conclusion, therefore, is that the Circuit Court erred in dissolving said injunction and dismissing the plaintiff's bill, and in not granting the plaintiff the relief prayed for. The decree complained of is therefore reversed. Said injunction should not have been dissolved, and said bill should have been retained for further action, if necessary; and the appellees must pay the costs of this appeal.

REVERSED. INJUNCTION PERPETUATED.