G. J. COTTRELL, JR., *et al.*

*v.*

J. S. NURNBERGER, *et al.*

(CC 729)

Submitted January 14, 1948. Decided March 30, 1948.

KENNA, JUDGE, concurring.

Fox AND RILEY, JUDGES, dissenting.

*Townsend & Townsend, W. J. Thompson,* and *John T. Keenan,* for plaintiffs.

*Mohler, Peters & Snyder,* and *H. L. Snyder,* for defendants.

HAYMOND, JUDGE:

This suit was instituted in the Circuit Court of Kanawha County by J. G. Cottrell, Jr., and eight other persons who own lots in Falls View Addition, in Jefferson District, Kanawha County, as plaintiffs, to enjoin the defendants, J. S. Nurnberger, Ray Wheeler and R. H. Harrison, their successors, grantees and assigns, from using a lot designated as Lot No. 45 of that addition except as a playground and a recreational area, and for other community purposes, for the enjoyment and the benefit of the plaintiffs and other lot owners, and to obtain a decree imposing upon the foregoing lot, for their benefit, a covenant to restrict its use to those purposes.

To the bill of complaint the defendants filed their written demurrer which the court overruled and, on its own motion, certified its ruling to this Court.

The material allegations of the bill of complaint, to the extent that it is pertinent to relate them here, set forth the following facts which upon demurrer are taken as true.

The defendant, Nurnberger, the owner of a tract of land containing 6.2 acres, situate on the waters of Coal River at Lower Falls Beach in Jefferson District, Kanawha County, in May, 1940, subdivided it into lots, streets and alleys and designated the subdivision so established as the "Falls View Addition at Lower Falls on Coal River" on a map which was recorded in the office of the clerk of the county court of that county. This addition was planned and laid out by him, before the plaintiffs acquired their particular lots, to provide suitable building lots for substantial summer homes. Part of the addition was designated and reserved for bathing, boating and picnic uses,

for a playground, and for other community purposes, to provide the purchasers and their families the full benefit and enjoyment of the lots and the homes to be constructed on them by the owners of such lots. He subsequently sold the lots in the addition now owned by the respective plaintiffs to them or their predecessors in title and, in making the sales, represented to the various purchasers that, in addition to the beach and playground areas shown on the map, a level lot comprising about an acre of land, located in the center of the addition and designated as Lot No. 45, was reserved solely and exclusively for playground, recreational and other community purposes for the use and benefit of the purchasers, and that he would construct a well and a well house on that lot for their common use and benefit. These representations were made by him or his authorized agents, to the respective plaintiffs or their predecessors in title, with the intent of inducing them to buy the lots at a higher price; and the various purchasers, relying upon the representations, bought the lots, paid for them a higher price than they otherwise would have paid, and subsequently entered into possession of Lot No. 45 which since 1941 has been used as a playground and a recreational area and for other community purposes.

The plaintiffs bought the particular lots owned by them from the defendant Nurnberger, or his successors in title, and in each instance the individual plaintiff relied on the foregoing representation and paid to him or his successors in title a price in excess of that which each plaintiff otherwise would have paid for the lots so purchased. The defendant, Nurnberger, is the owner of the lot upon which the plaintiffs seek to impose the restrictive covenant and, according to the allegations of the bill of complaint, notwithstanding the "promises, representations and restrictions" made by him in connection with the sales of the lots, he has entered into negotiations with the defendants, Wheeler and Harrison, for the sale of that lot to them to be used as a hotel site. The defendants have undertaken the construction of a hotel upon the lot which will deprive the plaintiffs of their use of it as a playground

and recreational area and for other community purposes and will cause irreparable damage to their lots and summer homes.

The plaintiffs charge that the defendants, with full knowledge of the "promises, covenants and restrictions" made by the defendant, Nurnberger, in connection with the sales of the lots owned by the plaintiffs, have willfully, intentionally and fraudulently violated and refused to comply with them and that as a result they will be irreparably damaged unless the defendants are restrained from violating "said promises, covenants and restrictions" and that they are without an adequate remedy at law.

A copy of the recorded map of the addition is filed as an exhibit with the bill of complaint. It shows a large space or section south of the various lots of the plaintiffs and between them and Coal River on which the southern line of the addition abuts which is designated as Beach and Playground. It also indicates Lot No. 45 by that number or designation without any legend to signify that it is reserved for or devoted to any particular use.

The prayer of the bill of complaint is that the defendants, their successors, grantees and assigns, be permanently enjoined and restrained from using Lot No. 45 of the addition other than for a playground, recreational area and community purposes for the benefit of the plaintiffs, that a decree be entered imposing a covenant restricting its use to those purposes and for their benefit, and for general relief.

The questions certified to this Court are: (1) May an easement in land be created by parol; (2) may a license to use land by the licensee be revoked at will by the licensor; (3) are the defendants estopped to assert the defense of the Statute of Frauds; and (4) do the plaintiffs have an adequate remedy at law?

It should be observed that the statements mentioned and contained in the bill of complaint, laid to the defendant Nurnberger, his agents and successors in title, and

which were relied upon by the plaintiffs to restrict his use of the lot in question to a playground, recreational area, and other community purposes for the benefit of the plaintiffs, are not alleged to have been incorporated in any deed or other writing, and also that these statements are characterized as representations, promises, covenants and restrictions in various parts of the bill of complaint. Whether they, in effect, constitute a representation or a promise will be discussed and dealt with later in this opinion.

It is obvious that the right claimed and sought to be enforced by the plaintiffs, if it in fact exists, is created by and arises from an easement and not by virtue of a license, and as the decisive questions in this case involve the method of creating a valid easement and the availability to the defendants of the defense of the Statute of Frauds in connection with a verbal agreement or arrangement, it is unnecessary to discuss or answer the second and fourth questions presented by the certificate. Whether the plaintiffs are entitled to the equitable relief which they seek depends, in the first instance, upon the existence of a valid easement which restricts the use of the lot by the defendants to the extent claimed by the plaintiffs. If no such easement exists it is necessary to determine whether the verbal statements of the defendant Nurnberger, or his agents and successors in title, and the conduct of the plaintiffs in reliance upon them, constitute an estoppel which deprives the defendants of the right to set up the Statute of Frauds as a defense to the claim of the plaintiffs.

Though the distinction between an easement and a license may, in a particular instance, be difficult to determine and has given rise to many conflicting decisions involving that question, the essential characteristics of the two are materially different. An easement creates an interest in land; a license does not, but is a mere permission or personal and revocable privilege which does not give the licensee any estate in the land. 1 Thompson on Real Estate, Permanent Edition, Section 318; Washburn on Easements and Servitudes, 5. "A license differs very ma-

terially from an easement in that it constitutes no interest in land whatever, and is not real estate, but is a *mere authority*, usually revocable at pleasure and not tranferable, to do a certain act or series of acts, for example, to hunt, upon the lands of another, without conferring any interest in the land itself. On the other hand, an easement is the very opposite of this, being an *interest in land*, which is usually *irrevocable* and *freely transferable* in connection with the dominant tenement, as other interests ·in land are, subject to the same limitations." 1 Minor on Real Property, Second Edition, Section 92. In the Missouri case of *Fuhr* v. *Dean*, 26 Mo. 116, 69 Am. Dec. 484, the Court, discussing the difference between a license and an easement, citing the Massachusetts case of *Cook* v. *Stearns*, 11 Mass. 536, said that "a license is technically an authority to do something on the land of another without passing an estate in the land, and a license to do a particular act does not invade the policy of the law that requires conveyances of title or interest in land to be in writing, for it may amount to nothing more than an excuse for an act which would otherwise be a trespass; but an easement cannot be acquired without a deed, or prescription which implies one."

An easement is variously spoken of as an incorporeal hereditament, *McClung* v. *Sewell Valley Railroad Co.*, 97 W. Va. 685, 127 S. E. 53; *Hennen* v. *Deveny*, 71 W. Va. 629, 77 S. E. 142, L. R. A. 1917A 524; *Uhl* v. *Ohio River Railroad Co.*, 51 W. Va. 106, 41 S. E. 340; *Ham* v. *Massasoit Real Estate Co.*, 42 R. I. 293, 107 A. 205, 5 A. L. R. 440; 1 Minor on Real Property, Second Edition, Section 95; 17 Am. Jur., Easements, Section 3; as an interest in land, *Fuhr* v. *Dean*, 26 Mo. 116, 69 Am. Dec. 484; *Long* v. *Mayberry*, 98 Tenn. 378, 36 N. W. 1040; 17 Am. Jur., Easements, Section 3; 1 Minor on Real Property, Second Edition, Section 92; 1 Thompson on Real Property, Permanent Edition, Section 328; 2 Washburn on Real Property, 6th Edition, 276; 19 C. J. 863; as an estate in land, *Branson* v. *Studebaker*, 133 Ind. 147, 33 N. E. 98; 1 Thompson on Real Property, Permanent Edition, Section 321; and as land, or real

property, 1 Washburn on Real Estate, Sixth Edition, 34; *United States* v. *Welch,* 217 U. S. 333, 54 L. ed. 787, 30 S. Ct. 527; *Panhandle Eastern Pipe Line Company* v. *State Highway Commission,* 294 U. S. 613; 79 L. ed. 1090, 55 S. Ct. 563.

An easement, being an incorporeal hereditament and as such a species of real property or land, 1 Washburn on Real Property, Sixth Edition, 34, is subject to the provisions of the statute governing the conveyance of lands, Section 1, Article 1, Chapter 36, Code, 1931, and the Statute of Frauds, Section 3, Article 1, Chapter 36, Code, 1931.

It is essential to the existence of an easement, which is appurtenant to land, that there be two distinct estates or tenements, the dominant to which the right belongs, and the servient upon which the obligation rests. 2 Washburn on Real Property, Sixth Edition, 275, 276, 17 Am. Jur., Easements, Section 3. Easements are sometimes classified as affirmative and negative. An affirmative easement exists when the owner of the servient estate must permit something to be done upon it or some use to be made of it. A negative easement exists when the owner of the servient estate is prohibited from doing something on his estate which but for the easement would be lawful and which affects the dominent estate. 2 Washburn on Real Property, Sixth Edition, 276; 17 Am. Jur., Easements, Section 13. The term easement and the term servitude are often used indiscriminately; the one is usually applied to the right enjoyed, the other to the burden imposed. A right of way over the land of another is an easement in the dominant estate and a servitude upon the servient estate. Washburn on Easements and Servitudes, 5. "The rights created by covenants of a negative character, such as restrictive covenants usually are, have been characterized variously as rights in the nature of servitudes or easements, equitable easements, negative easements, reciprocal negative easements, and as 'equities' in favor of adjoining lands." 17 Am. Jur., Easements, Section 28. Negative easements generally arise from restrictive covenants. 17 Am. Jur., Easements, Section 13. Restrictions of the char-

acter sought to be enforced by the plaintiffs in this suit are negative easements. *Hennen* v. *Deveny,* 71 W. Va. 629, 77 S. E. 142, L. R. A. 1917A 524; *Ham* v. *Massasoit Real Estate Company,* 42 R. I. 293, 107 A. 205, 5 A. L. R. 440. A building restriction is a negative easement, is within the Statute of Frauds, and must be in writing. *Davis* v. *Robinson,* 189 N. C. 589, 127 S. E. 697; *Ham* v. *Massasoit Real Estate Company,* 42 R. I. 293, 107 A. 205, 5 A. L. R. 440.

An easement can be created or acquired by grant, express or implied, or by prescription which presupposes a grant. 27 C. J. 193; 1 Washburn on Real Property, Sixth Edition, 277; 1 Thompson on Real Property, Permanent Edition, Section 318; *Long* v. *Mayberry,* 96 Tenn. 378, 36 N. W. 1040. An easement may be created by will. 17 Am. Jur., Easements, Section 19. In *Pifer* v. *Brown,* 43 W. Va. 412, 27 S. E. 499, 49 L. R. A. 497, this Court said, in Point 3 of the syllabus: "The right of drainage through the lands of another is an easement requiring for its enjoyment an interest in such lands which cannot be conferred except by deed or conveyance in writing." An easement in land is an incorporeal hereditament which may be the subject of grant, devise or inheritance. *McClung* v. *Sewell Valley Railroad Co.,* 97 W. Va. 685, 127 S. E. 53. It is said that theoretically an easement must rest upon a grant and that it can not exist by parol. 17 Am. Jur., Easements, Section 18; 2 Washburn on Real Property, Sixth Edition, 277; *Fuhr* v. *Dean,* 26 Mo. 116, 69 Am. Dec. 484. There is also authority for the statement that an easement is a hereditament and an interest in land capable of creation or transfer only by operation of law or by grant or prescription. *Ham* v. *Massasoit Real Estate Co.,* 42 R. I. 293, 107 A. 205, 5 A. L. R. 440. In *Pitkin* v. *Long Island Railroad Co.* (N. Y.), 2 Barbour's Chancery 221, 47 Am. Dec. 320, it is said that an easement in the land of another is an uncertain interest in land within the Statute of Frauds, and could not be acquired by a parol agreement. See Browne on Statute of Frauds, Fifth Edition, 6; *Harris* v. *Miller,* 19 Tenn. 158, 33 Am. Dec. 138; *Dyer* v. *Sanford,* 9 Metcalf 395, 43 Am. Dec. 399.

The general rule, subject to several exceptions, is that an easement can be created only by grant, express or implied, or by prescription, which presupposes a grant. 27 C. J. 193. An easement may, however, be created by agreement or covenant as well as by grant. *Post* v. *Bailey,* 110 W. Va. 504, 159 S. E. 524. Many authorities say that, as an exception to the general rule just stated, an easement may sometimes be created by estoppel. 1 Minor on Real Property, Second Edition, Section 104; 17 Am. Jur., Easements, Section 74. One eminent authority states that an easement may be created or acquired by six different methods: express grant, reservation or exception in a deed, implied grant, prescription, a statutory proceeding usually under the power of eminent domain, and estoppel, and in discussing an easement acquired by grant says: "Even apart from the common-law requirement that the grant of an easement as of any other incorporeal thing, must be by writing under seal, a writing is necessary, under the Statute of Frauds, and an attempted oral grant of an easement is no more than a license." Tiffany, Real Property, two volumes in one edition, Section 315. See also 1 Minor on Real Property, Second Edition, Section 93, in which that writer says that easements may arise by natural right, by express grant, by express reservation or exception, by implied grant, by implied reservation, by prescription, and by estoppel; and 19 C. J. 873, where it is said that an easement lies not in livery but in grant and that it is very generally stated that a freehold interest in an easement can not be created or passed except by deed or by prescription, but that the rule is subject to some exceptions and that in some circumstances an easement may be created by estoppel, by part performance of a parol agreement, or by special statutory proceedings. In 17 Am. Jur., Easements, Section 74, the statement is that, notwithstanding the general rule that an easement must rest upon a grant, or prescription, an easement may arise from estoppel.

From these authorities, and many others that could be cited, it is clear that the restriction which the plaintiffs

seek to impose upon the lot owned by the defendant Nurn-berger, if valid and effective, is an easement; that it is within the provisions of Section 3, Article 1, Chapter 36, Code, 1931, which require a contract for the sale of land, or a note or memorandum of such contract, to be in writing and signed by the party to be charged, or his agent, and of Section 1, Article 1, Chapter 36, Code, 1931, which declare that no estate of inheritance or freehold, or for a term of more than five years, in lands, shall be created or conveyed except by deed or will; and that such easement can not be created or acquired merely by parol. See *Sargent* v. *Leonardi,* 223 Mass. 556, 112 N. E. 633.

The question when and in what circumstances an oral declaration may result in the creation of an easement by estoppel, or, as otherwise stated, when the person against whose estate in land an easement is sought to be established is estopped to assert the Statute of Frauds as a defense to a verbal contract within the operation of that statute, has given rise to conflicting decisions in different jurisdictions.

There are cases which hold that a verbal declaration that certain land will be used in a particular way or is or will be subjected to specific restrictions will be recognized and enforced, and reference is now made to some of these decisions.

In *Trueheart* v. *Price,* 2 Munf. (Va.) 468, according to the head note, it was held that if the vendor of land in a town verbally assure the vendee that an adjoining piece of land is always to be kept open as an alley and because of such assurance the vendee is induced to make the purchase, or to give a higher price for the property, a court of equity will enjoin the closing of the alley. The contents of the report of this case consist mainly of the contentions of counsel for the respective parties, and it is difficult to get a complete and accurate view of the facts. The principal statement, however, in that portion of the report which may be regarded as the opinion in the case, indicates that the original vendee of the land in question purchased it upon an express declaration by the vendor that

"an alley twelve feet wide was established, and to be always kept open" between a designated tenement and the land purchased by the vendee. The vendor was enjoined, upon the application of a purchaser from the vendee, from obstructing the alley and that holding by the trial chancellor was affirmed upon appeal. It appears that the statement that the twelve foot alley was established amounted to a representation of an existing fact and that the additional statement that it would always be kept open, though in form a promise with respect to its condition in the future, was in substance and effect merely the expression of a natural incident of the alley itself.

In *Williams Realty Co.* v. *Robey,* 175 Md. 532, 2 A. 2d 683, the Court held that when the vendee is persuaded to buy a lot by the assurances of the vendor of restricted facilities, in a community beach located immediately across his front road or street, equity will enjoin the repudiation of such assurances by the successor in title of the vendor. In *Cole* v. *Minnesota Loan and Trust Co.,* 17 N. D. 409, 117 N. W. 354, the owners of a town site laid out a square block in the center, designated by the number two. It was not divided into lots. Other blocks surrounding the square were divided into lots which faced toward it. One of the proprietors in active charge of the sales of the lots represented to prospective purchasers that the square was and would remain a public square or park. The plaintiffs, in reliance on these and other representations by another owner of the enterprise, purchased lots fronting on the square and placed valuable improvements upon them. The Court held that the foregoing acts and representations constituted a dedication of block two as a public square or park and that the owners of the projects were estopped to deny that the square had been dedicated for use as a public square or park.

In *Prescott* v. *Edwards,* 117 Cal. 298, 59 Am. St. Rep. 186, it was held that a person who went upon land with a surveyor, staked boundary lines, and divided the land into lots and left between them strips which he represented to prospective purchasers to be streets and who later sold

and conveyed lots, but did not include such strips, was estopped to deny, as against his grantees and their successors in title that the strips were streets. In the opinion the Court said: "In the present case, these strips were outlined upon the ground, and at the date of the purchase were declared by the owner to be streets. The right to use them as such formed part of the consideration moving to the vendee for the purchase, and such right of use became appurtenant to the land granted. The owner declared to the purchasers that the parcels were streets; the purchasers acted upon such declaration; and as to such purchasers those parcels are streets."

In *Tallmadge* v. *The East River Bank*, 26 N. Y. 105, the owner of land which had been laid out into lots, erected houses on some of the lots according to a plat which he had prepared and exhibited to purchasers of the lots and assured them that any houses to be built upon the other lots were to be located with reference to the street as indicated by the plat. It was held that the building restriction was valid and binding upon a purchaser of a lot who had notice of the restriction.

Other courts, however, have refused to accord binding force or effect to verbal restrictions upon the use of land. In *Pyper* v. *Whitman*, 32 R. I. 511, 80 A. 6, 35 L. R. A. (N. S.) 938, the complainant purchased a tract of land from the respondent. He relied upon a plat exhibited at the time of the sale which showed a contemplated street abutting the rear end of the purchased property. The plat was used extensively by the respondent in advertising the land for sale and was posted in several places in the neighborhood. When the sale was made the respondent represented to the complainant that all the streets indicated upon the plat would be laid out and opened for public use. Relying upon these representations, he purchased the property and paid a larger price for it because the street was laid out along the rear as indicated by the plat. The deed for the property to the purchaser made no reference to the plat or to the street. Later the land was replatted and the street in question was moved one hun-

dred feet west of its location as originally platted. As relocated there was a row of houses between the land of the complainant and the street. The bill of complaint prayed that the respondent be compelled to lay out the street as shown on the original plat. A demurrer to the bill of complaint was sustained and upon appeal the action of the trial court was affirmed, and by its decision the appellate court held that the purchaser, by reason of the act of the seller in exhibiting the plat and his representations as to it, did not acquire a right of way over the proposed street which would entitle him to restrain the seller from replatting and relocating the street.

To the same effect is the later case of *Ham* v. *Massasoit Real Estate Company,* 42 R. I. 293, 107 A. 205, 5 A. L. R. 440, in which the Court cited and approved the *Pyper* case and held that the mere nonperformance by a vendor of lots of an oral promise made to a buyer to restrict other lots sold in the area was not fraud against the buyer and his successor which entitled the latter to enjoin the vendor from conveying other lots free of the restrictions. The claim of the complainant was that, during negotiations which resulted in the purchase of a lot shown on a plat of its lands, the respondent, a real estate company, by its agents, represented to the complainant and her husband that certain designated lots were subject to stated restrictions and that they would be held or sold subject to the restrictions. There was no covenant to that effect in the deed made to the complainant's husband by the respondent. The lot was later conveyed to the complainant. After the sale to the complainant's husband, the respondent sold a lot free of restrictions and other lots subject to different restrictions. The complainant sought to enjoin the respondent from selling certain lots free from the restrictions and to compel it to remove certain buildings located within the street lines as indicated on the plat. The Court refused to enjoin such sales of the lots, denied the claim of the complainant that the payment of the purchase price of the lot constituted such part performance as entitled her to relief in equity and rejected her contention that the expenditures of money in the erection of a house upon

the lot, made with the knowledge of its agent, estopped the respondent to set up the defense of the Statute of Frauds to the oral agreement.

In *Sprague* v. *Kimball,* 213 Mass. 380, 100 N. E. 622, 45 L. R. A. (N. S.) 962, Ann. Cas. 1914A 431, the Court held that a purchaser of a lot, sold by reference to a recorded plan, whose deed contained restrictions on the use of his property, did not acquire a right, as against the grantor, to subject his remaining lots to the same restrictions unless such restrictions were imposed upon them by an enforceable agreement, and that such purchaser did not, by taking title to his lot, occupying it and making improvements upon it, in reliance upon the oral agreement of the grantor to subject other lots to restrictions, acquire any legal or equitable interest in the remaining land of the grantor. In the opinion the Court said that the mere nonperformance of an oral contract, within the Statute of Frauds, where no relation of trust or confidence exists, does not constitute fraud. This case was followed in *Sargent* v. *Leonardi,* 223 Mass. 556, 112 N. E. 633, in which it is said that it is well settled "that an easement in the nature of an equitable restriction cannot be imposed upon land by parol."

In *Norton* v. *Kain,* 121 App. Div. 497, 106 N. Y. Supp. 129, the owner of four adjoining lots sold and conveyed two of them to purchasers to whom, in order to induce the purchase, he represented that the remaining lots were subject to restrictions against the construction upon them of any building except residences similar to those on the lots sold, and promised that no other kind of building would be erected on the lots. This oral promise was held to be within the Statute of Frauds and unenforceable.

Other cases could be added to those in each of the foregoing two groups. To do so is unnecessary and would unduly extend the length of this opinion. The cases referred to in these groups are representative of the decisions generally within each of them. Cases in each group deal with representations and oral agreements. In some of the cases, in which the facts appear to be substantially similar, the

Courts reach different conclusions. It is difficult, if not impossible, to reconcile these diverse holdings and it is not necessary to undertake to do so in order to resolve the certified question for consideration which involves the Statute of Frauds.

The averments of the bill of complaint, as heretofore noted, refer to the alleged verbal statements of the defendant Nurnberger both as representations and as promises. To determine whether the defendants are estopped to set up the Statute of Frauds as a defense to a contract which is within the statute it is important to consider the material difference between a representation and a promise. The one relates to some past or existing fact; the other deals with a declaration in the nature of an agreement by which one person obligates himself to do or to refrain from doing some act. "Strictly speaking a promise is not a representation." *Cunningham* v. *Guenther,* 96 Ala. 564, 11 S. 649, quoted in Black's Law Dictionary, 3rd ed., 1443. In the law of contracts a representation is "a statement express or implied made by one of two contracting parties to the other, before or at the time of making the contract, in regard to some past or existing fact, circumstance, or state of facts pertinent to the contract, which is influential in bringing about the agreement." Black's Law Dictionary, 3rd ed., 1534. A promise is "a declaration, verbal or written, made by one person to another for a good or valuable consideration, in the nature of a covenant by which the promisor binds himself to do or forbear some act, and gives to the promisee a legal right to demand and enforce a fulfillment." Black's Law Dictionary, 3rd ed., 1433.

Tested by the foregoing definitions or standards, the statements laid to the defendant Nurnberger constitute a promise instead of a representation. The statement that Lot No. 45 was reserved has to do with an existing fact or situation, but that statement, without more, is meaningless. The reservation, in existence at the time, is of no purpose or effect unless it is to be continued. The statement of the purpose for which it was reserved, which is

essential to impart any meaning to the complete statements, has to do with the use to which the lot will be devoted and involves acts to be done or not to be done in the future. In substance the statements amount to a promise that Lot No. 45, which was reserved for playground, recreational and other community purposes for the use and the benefit of the purchasers, will be used in the future for those purposes, and that the defendant Nurnberger will construct a well and a well house on the lot for their common use and benefit. The statements, as a whole, are of the type which, though sometimes characterized as representations, were regarded merely as oral promises within the Statute of Frauds, and therefore ineffective to create a valid easement or restriction, in the cited cases of *Ham* v. *Massasoit Real Estate Company,* 42 R. I. 293, 107 A. 105, 5 A. L. R. 440; *Pyper* v. *Whitman,* 32 R. I. 511, 80 A. 6, 35 L. R. A. (N. S.) 938, and *Sprague* v. *Kimball,* 213 Mass. 380, 100 N. E. 622, 45 L. R. A. (N. S.) 962, Ann. Cas. 1014A 431. "An oral promise to grant an easement is not sufficient to raise an estoppel in favor of one who has acted upon it. There must be something more than a promise to grant it, even if there was a consideration for the promise, and the promisee has acted upon the promise." 1 Thompson on Real Estate, Permanent Edition, Section 355.

Treating the statements of the defendant Nurnberger as an oral promise instead of a representation, its nonperformance or its violation does not amount to fraud or create an equitable estoppel, or estoppel in pais, which removes the promise from the operation of the Statute of Frauds. With respect to restrictions which constitute an easement, estoppel does not apply when the restrictions involve a promise for the future rather than a representation of a past or existing fact. 1 Minor on Real Property, Second Edition, Section 105. The mere failure or refusal of the vendor in an oral agreement, which is within the Statute of Frauds and for that reason unenforceable, to recognize it as binding or to comply with it does not in itself amount to fraud or inequitable conduct upon which to base estoppel, when, as here, it does not appear that he

intended to violate the oral agreement when it was made. In refusing to perform it he is simply exercising a statutory right. The other party to the contract is presumed to know that the contract is unenforceable and that he acts under it at his risk. To regard otherwise the acts of the parties to a contract within the statute would be to disregard the statute and to refuse to give it force or effect. The oral promise set forth in the bill of complaint does not operate to create an easement or to impose restrictions upon Lot No. 45. "An easement is not created by equitable estoppel except in cases of fraud", 1 Thompson on Real Property, Permanent Edition, Section 355; and, generally, the violation of a promise does not, of itself, constitute fraud. *Love* v. *Teter,* 24 W. Va. 741. The general rule is that a promise to be performed in the future, and its subsequent breach, are not sufficient bases upon which to predicate fraud. *Dyke* v. *Alleman,* 130 W. Va. 519, 44 S. E. 2d 587. There may be an exception to the general rule when the maker of a promise did not intend to keep it at the time it was made and it is relied on by another and is the means by which fraud is perpetrated, in which event the nonperformance of the promise may constitute fraud. *Dyke* v. *Alleman,* 130 W. Va. 519, 44 S. E. 2d 587; *Davis* v. *Alford,* 113 W. Va. 30, 166 S. E. 701. The allegations of the bill of complaint, however, do not bring the oral agreement now under consideration within the exception to the general rule.

The plaintiffs cite and rely upon the cases of *Tufts* v. *Copen,* 37 W. Va. 623, 16 S. E. 793, and *Sanford* v. *The First City Company,* 118 W. Va. 713, 192 S. E. 337, in support of their asserted right to impose the claimed restrictions upon Lot No. 45. In the *Tufts* case, written by Judge English who later prepared the opinion in *Pifer* v. *Brown,* 43 W. Va. 412, 27 S. E. 499, 49 L. R. A. 497, in which there is no reference to the earlier decision, it appears that the plaintiff entered into an oral contract with the defendant, a married woman, by which she agreed that he might construct and operate a tramroad over her lands. He paid and she accepted the agreed consideration for the right of

way. She permitted him to construct the tramway at great expense and to operate it for several months. She then obstructed the tramroad by building a fence across it and by that means deprived him of its use. This Court held that by her conduct she was estopped to obstruct the road or to repudiate her oral agreement and that a court of equity would not permit her, after allowing the work to be completed and to be in operation, to destroy its entire usefulness by means of the obstruction. In that case to permit the defendant to deny the easement would cause the plaintiff to be deprived of the use of valuable property which, in reliance upon his right to the easement, he had placed upon it. Here the plantiffs are subjected to no such loss and no equitable estoppel has occurred. In the *Sanford* case this Court held that equity would enforce by specific performance a parol contract for an easement when it appears that the party seeking to establish the easement under the contract has performed it in whole or in part to the extent that to refuse to enforce performance of it would be tantamount to a fraud upon the party claiming the easement. In that case the denial of an easement, in favor of the owners of a building, upon a strip of land on which the lessee of an adjoining lot had erected a wall of the building with the acquiescence of the lessor, the predecessor in title of the owners of the building, would have deprived them of the use of one of its main walls and destroyed its value. As already indicated, there is no allegation in the bill of complaint of any acts and conduct upon the part of the defendant Nurnberger which establish any fraud upon the plaintiffs or which create an equitable estoppel against the defendants. Because of the different factual situation which existed in the *Tufts* case and in the *Sanford* case, as compared to that disclosed by the allegations of the bill of complaint in the case at bar, the holdings in those cases have no application here.

The allegations of the bill of complaint that the plaintiffs paid the purchase price for the lots conveyed in an amount in excess of that which they otherwise would have paid except for the representations with respect to Lot No. 45,

and that they entered into possession of that lot, which since 1941 has been used and occupied as a playground, recreational area, and for other community purposes, do not show such part performance of the oral agreement by the plaintiffs as is necessary to render the Statute of Frauds inapplicable. The payment of the purchase price, even though excessive, is not of itself part performance which will remove the agreement from the operation of the statute. *Gibson* v. *Stalnaker*, 87 W. Va. 710, 106 S. E. 243; *Summers* v. *Hively*, 78 W. Va. 53, 88 S. E. 608; *Miller* v. *Lorentz*, 39 W. Va. 160, 19 S. E. 391; *Gallagher* v. *Gallagher*, 31 W. Va. 9, 5 S. E. 297. Nor does the alleged possession of the lot by the plaintiffs amount to the exclusive possession which is necessary to constitute part performance. To entitle a person to specific performance of a parol agreement the possession must be actual, notorious and exclusive. *Kee* v. *Simmons*, 120 W. Va. 349, 198 S. E. 136; *Woods* v. *Stevenson*, 43 W. Va. 149, 27 S. E. 309; *Gallagher* v. *Gallagher*, 31 W. Va. 9, 5 S. E. 297. To constitute part performance the possession must be taken under and by virtue of the agreement and be referable solely to it. *Gibson* v. *Stalnaker*, 87 W. Va. 710, 106 S. E. 243. There is no allegation to that effect or that the plaintiffs made any improvements upon Lot No. 45. They simply improved the lots which they purchased and to which they hold title under their respective deeds, and those lots are their own properties. In *Ham* v. *Massasoit Real Estate Co.*, 42 R. I. 293, 107 A. 105, 5 A. L. R. 440, the material facts of which have been heretofore stated, the claim of part performance of an oral agreement was advanced by the complainant, the purchaser of a building lot, who sought to impose, under such an agreement, restrictions identical with those contained in her deed, upon other lots of the vendor. In dealing with and rejecting that contention, the Court uses this pertinent language:

"The complainant argues that the payment of the purchase price of the lot constituted such a part performance as will entitle her to relief in equity; also that the expenditures of money in the erection of the house made with knowledge of

Brown estopped the respondent to set up the statute of frauds.

"The lot was purchased and the house erected because complainant and her husband desired a summer residence at Oakland Beach. It is as reasonable, at least, to assume that the house was erected for the purpose of occupancy by complainant and her family, and that Brown supposed it was being constructed for that purpose, as it is to assume that the house was built because she relied on Brown's oral representations or promise. She built and occupied a house, as has been done by millions of other persons who expected to obtain no right or interest in their grantor's remaining land. The complainant simply improved her own real estate. She made no expenditures or improvements on the grantor's remaining land on which she seeks to impose a burden. See Peckham v. Barker, 8 R. I. 17.

"The court, in Sprague v. Kimball, supra, 213 Mass. at page 384, 100 N. E. at page 624, 45 L. R. A. (N. S.) 962, Ann. Cas. 1914A, 431, used the following language:

" 'Nor did the plaintiffs, on whom, and not on the defendant, the burden of part performance rests where this ground for relief is sought, by taking title, entering into occupation, and making improvements on their own estates in reliance upon the parol agreement, acquire any legal or equitable interest in the defendant's remaining land'—citing Caton v. Caton, L. R. 1 Ch. 137; Graves v. Goldthwait, 153 Mass. 268, 269, 26 N. E. 860, 10 L. R. A. 763; Low v. Low, 173 Mass. 580, 582, 54 N. E. 257; Sarkisian v. Teele, 201 Mass. 596, 88 N. E. 333.

"The equitable rule that part performance will take a contract out of the statute of frauds does not apply. This is not a suit to obtain or reform a deed. It is an attempt to enforce an oral agreement. The complainant's husband purchased a house lot, and, upon payment of the purchase price, received a deed which is a solemn instrument under seal intended to recite definitely and accurately everything which the grantee takes and is to enjoy in consideration of the purchase price."

The Statute of Frauds is a time honored statute. The need of a statute of that character became evident in England during the reign of Charles II and it was enacted in 1676. In some form it has been the law of this State and of the Commonwealth of Virginia since the beginning of the statehood of each. It was designed to prevent fraud and perjury in connection with the sale and the transfer of lands and other designated transactions. Though it may never be made the instrument of fraud which it was intended to prevent, it is just as necessary and equally important that it should not be ignored or circumvented in any set of circumstances which comes within its scope unless its application, in a particular instance, results in fraud or leads to inequitable conduct. These statements as to the necessity of that statute apply with equal force to the statute which deals with conveyances and requires the creation and the conveyance of specified estates and interests in land to be by deed or will. Code, 36-1-1. The dangerous consequences which would follow the relaxation of the requirements of these wise and salutary statutes to permit the creation and the transfer of various interests and estates in land by parol would inevitably produce intolerable confusion and destructive instability in the law of real property. To sanction the substitution of verbal declarations for written instruments in the creation or the transfer of certain interests and estates in land is to reject the wholesome experience of the past for uncertain memory and unrecorded expression and, in so doing, to adopt a course which is necessarily fraught with danger. This risk should never be undertaken except to prevent, in a clear case, the injustice which results from fraud or inequitable conduct; and whenever doubt on this point exists the requirements of these statutes should be strictly adhered to and enforced.

For the reasons stated the ruling of the Circuit Court of Kanawha County in refusing to sustain the demurrer of the defendants is reversed.

*Ruling reversed.*

Fox, JUDGE, dissenting:

I concur in that part of the majority opinion which holds that the asserted rights of the plaintiff constitute an easement in the lot of land out of which this controversy arose; that such easement can not arise out of an oral agreement, except in cases where there has been fraud or such inequitable conduct on the part of a vendor or owner, as creates against him an estoppel to assert the Statute of Frauds; and that an oral agreement to create an easement is within the Statute of Frauds, and, in the absence of fraud or inequitable conduct, a vendor in such oral agreement is not estopped to assert the statute against the person asserting a right thereunder. But I am not in agreement with the majority in the application of these principles to the facts as alleged in the bill of complaint which, on demurrer, are assumed to be true.

The majority opinion correctly states the steps leading up to the conveyances to the plaintiffs. There is nothing in any of the said conveyances in respect to the easement now claimed by the plaintiffs. The agreements and representations are alleged to have been oral and are stated in the bill to have been as follows:

> "Plaintiffs further say that defendant, Nurnberger, subsequently sold the lots in said addition to divers persons, including plaintiffs or their predecessors in title, and that in making said sales he represented to said purchasers that in addition to the beach and playground areas shown on said map, Lot No. 45 of said addition, which is level, comprises approximately an acre of land and is located in the center of said addition, was reserved solely and exclusively for playground, recreational, and other community purposes for the use and benefit of said purchasers; and that he would construct a well and well house on said Lot No. 45 for the common use and benefit of said purchasers; that said Nurnberger made said representations with the intent and purpose of inducing said purchasers to buy said lots and to obtain a higher price for same; that said purchasers, relying on said representations, did purchase said lots; that said purchasers subsequently entered

into possession of said Lot 45 and for a long period of time, to-wit, from 1941 hitherto, said Lot No. 45 has been used and occupied as a playground, recreational area, and for other community purposes, as aforesaid."

The violation of these agreements and representations is alleged in the bill in the language following:

"Plaintiffs further aver, upon information and belief that notwithstanding said promises, representations and restrictions aforesaid, defendant, J. S. Nurnberger, has entered into negotiations with defendants, Ray Wheeler and R. H. Harrison, for the sale of said Lot No. 45 and the construction thereon of a hotel building; that pursuant to said negotiations, said defendants have undertaken the construction of said building upon said Lot No. 45. Plaintiffs further aver that the construction of said hotel building will deprive plaintiffs and their families of the use and enjoyment of said Lot No. 45 as a playground, recreational area, and for other community purposes; that the construction of said hotel building will cause the general environment and enjoyment of said lots and summer homes to be less pleasant and beneficial to these plaintiffs and that the value of same will be greatly reduced; that plaintiffs will suffer irreparable damages and injury in their use, possession and enjoyment of their said lots and summer homes.

Plantiffs further aver that defendants, with full knowledge of said promises, covenants, and restrictions, have wilfully, intentionally, and fraudulently violated and refused to comply with same. Plaintiffs further aver that as a result of defendants' wilful, unlawful and improper conduct, they will be irreparably damaged unless the said defendants are restrained and inhibited from violating said promises, covenants and restrictions, and that they are without an adequate remedy at law."

As I read and understand the majority opinion, it is based solely on the theory that the agreements and representations, alleged in the bill, did not amount to a representation of a then existing fact, but only a promise of

something to be performed in the future; and that the violation of a mere oral promise is not fraudulent, and that such a promise is not enforceable. With this construction of the language of the allegations aforesaid, I can not agree. This is what the bill alleges:

> "In making said sales the representation to said purchasers that in addition to the beach and playground areas shown on said map, Lot No. 45 of said addition, which is level, comprises approximately an acre of land and is located in the center of said addition, *was reserved solely and exclusively for playgrounds, recreational and other community purposes for the use and benefit of said purchasers;* and that he would construct a well house on said Lot No. 45 for the common use and benefit of said purchasers." (Emphasis supplied.)

I agree that the undertaking to construct a well and well house on the lot is nothing more than a promise, but I contend that the remainder of the allegations quoted above constitute a clear and unequivocal representation of an existing fact, namely; that Lot No. 45 was at that time reserved exclusively for certain purposes, thus excluding its use for any other purpose. The bill then goes on to allege that the plaintiffs relied on such representations, and they were later wilfully violated by the defendant Nurnberger to the injury of the plaintiffs. It is upon the contention that there was a clear and unequivocal representation of an existing fact, which representation, according to the allegations of the bill, was afterwards violated that I base my dissent. Of course my position is taken on the assumption that the allegations are true. Whether they will be supported by proof is not now important. That question will come later.

If the agreements and representations aforesaid be given the meaning contended for by me, then I think the principles announced in *Cole* v. *Minnesota Loan and Trust Co.,* 17 N. D. 409, 117 N. W. 354, should be applied. The facts in that case closely parallel those presented in the case at bar. Other cases cited in the majority opinion sup-

port the general theory of the *Cole* case. On the other hand, I suggest, with deference, that the cases relied on to support the opposite view are not applicable to the facts in the case now before us.

I would, therefore, affirm the ruling of the Circuit Court of Kanawha County.

I am authorized to state that Judge Riley concurs in this dissent.

KENNA, JUDGE, concurring:

I am in agreement with the Court's conclusion that the holdings of the Circuit Court of Kanawha County in this matter must be reversed. In my opinion, however, the question certified, that is, the overruling of a demurrer to a bill of complaint is subject to a much simpler approach.

The complainants allege that they are owners of lots in the Falls View Addition acquired by deeds, either directly or indirectly, from the defendant. The bill of complaint describes their lots by lot number, referring to a recorded plat filed as an exhibit with the bill of complaint. That plat on its face dedicates a part of the land shown upon it to common use by the purchasers and owners of lots described and numbered by the plat. The subdivision lies on Coal River and its entire width on the river's bank for a depth of between two and three hundred feet is marked "beach" and "playground". Of course that constituted what in this jurisdiction is a private dedication upon the recording of the plat and the sale of lots described thereby. The plaintiffs are now contending that Lot 45 was also intended to be used as a playground and for public recreation due to certain oral promises or representations made to them or their predecessors in title before the delivery of their deeds. Of course the plat became a part of each deed in which it was referred to for the purpose of description, and since the plat deals with the matter of dedication to common use, a deed of which it is part necessarily embraces the same subject. There-

fore, in my opinion, the rule that a deed or written instrument cannot be contradicted or altered by evidence of parol understandings arrived at between the parties prior to or contemporary therewith concerning a matter therein dealt with, is controlling in this matter.

But were the statements made by Nurnberger, which, under the allegations of the bill of complaint, caused complainants to buy and to pay a greater consideration for the lots that they did buy, made orally? The bill of complaint, with apparent care, avoids stating whether the representations were spoken or were in writing. Therefore, since the language of the bill of complaint is susceptible of meaning one of two different things, the rule that the language of a pleading is to be construed most strongly against the pleader is applicable. *Blooming Rose Coal Co. v. White,* 128 W. Va. 502, 37 S. E. 2d 455; *Brecker v. Brecker,* 122 W. Va. 120, 8 S. E. 2d 522; *Rine v. Morris,* 99 W. Va. 52, 127 S. E. 908. If that be so, then upon demurrer a statement which the bill alleges induced complainant to buy, is to be regarded as having been orally made. Since the bill of complaint on its face shows that the complainants are holding their lots by virtue of deeds, Nurnberger being the common source of title, and shows also that the promises or representations upon which they base their claim for recovery were orally made prior to the execution and delivery of their deed, the rule that prior or contemporaneous negotiations concerning a subject matter dealt with in a written instrument are merged in the writing seems to me to have evident application. *Kanawha Banking and Trust Co. v. Gilbert,* 131 W. Va. 88, 46 S. E. 2d 225; *Ligon v. Godfrey L. Cabot, Inc.,* 123 W. Va. 400, 15 S. E. 2d 595; *Central Trust Co. v. Virginia Trust Co.,* 120 W. Va. 23, 197 S. E. 12; 70 A. L. R. 752.

For the foregoing reasons, in my opinion, the bill of complaint shows on its face: First, that the complainants hold under a common source of title; Second, that the conveyances from that common source embrace the question of dedication to common use of certain property which does not include Lot 45; Third, that since dedication

was included in the contracts in writing by which complainants are bound, they cannot be permitted to rely upon the breach of oral understandings arrived at prior to or contemporaneously with the execution and delivery of those contracts in writing or of deeds that relate to that subject matter, i. e. dedication. I therefore do not think it necessary to go further than the parol evidence rule in deciding this case.